IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 19, 2003

## STATE OF TENNESSEE v. KEVIN LAMONT HUTCHISON

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40000608     Michael R. Jones, Judge**

_____

**No. M2001-03174-CCA-R3-CD - Filed December 30, 2003**

_____

The appellant, Kevin Lamont Hutchison, was convicted by a jury in the Montgomery County Circuit Court of aggravated robbery. The trial court sentenced the appellant to seventeen years imprisonment in the Tennessee Department of Correction. On appeal, the appellant contends that the evidence was not sufficient to support his conviction. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Gregory D. Smith (on appeal); Collier Goodlett and Charles Bush (at trial), Clarksville, Tennessee, for the appellant, Kevin Lamont Hutchison.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and C. Daniel Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Factual Background**

In the early morning hours of August 16, 2000, April Sullivan was working at The Pantry, a convenience store located on Guthrie Highway and Dunbar Cave Road in Clarksville. Sullivan was talking on the telephone with a friend when the appellant entered the store. At trial, Sullivan testified that when she asked the appellant if she could help him, the appellant showed her a gun that he was holding in his hand and told her that he needed a couple of cartons of cigarettes. The appellant then grabbed a display containing eighty-six packs of cigarettes and left the store. Sullivan noted that earlier in the evening of the offense, another employee had taped a note on the cigarette display. Additionally, she stated that at the time of the offense, a pack of cigarettes sold for "between three dollars and three fifty."

Sullivan stated that she was "[t]errified" when she saw the gun and held her hands in the air. Sullivan did not chase the appellant when he left because she knew that he had a gun. Immediately after the appellant left the store, Sullivan called 911 to report the robbery.

Sullivan reported that the appellant was wearing an "army type shirt." Later that night, Sullivan identified the appellant as the individual who came into the store. Additionally, Sullivan identified the gun police discovered in the pick-up truck in which the appellant was riding when he was arrested as the gun used by the appellant during the robbery.

At trial, Sullivan reviewed photographs from a video surveillance camera located in the store. She identified the appellant as the individual shown on the photographs. She also testified that she was "positive" that the appellant had a weapon and that the gun used by the appellant was "kind of like copper looking around the barrel." On cross-examination, Sullivan acknowledged that the photographs did not show that the appellant had a gun. She also conceded that the appellant never tried to take any money from her.

Officer Tyler Barrett of the Clarksville Police Department was on duty in the early morning hours of August 16, 2000, when he heard the report of a robbery at The Pantry. When the report came through, Officer Barrett was approximately six miles from the scene of the robbery. He testified that he immediately began watching "to see if I saw any vehicles coming up 374 with any subject that would look like the subject that had been described over the police radio that had committed the robbery at The Pantry."

Shortly thereafter, Officer Barrett observed a Ford Ranger pick-up truck "coming up the hill." The truck's passenger seat was reclined and Officer Barrett saw the top of the passenger's head. As the truck passed Officer Barrett's patrol car, the passenger, later identified as the appellant, looked out the side window. Upon seeing the patrol unit, the appellant jerked his head back "in a real suspicious type fashion."

Officer Barrett explained that he decided to "get in behind the vehicle and run the tag and just follow the vehicle and see where it was going to and see if maybe some more information would come out on the vehicle, at that point the vehicle started being driven very erratically." Officer Barrett activated his blue lights, and the truck initially slowed but then "took off again, at that point sped up."

The truck finally came to a stop in the parking lot of "an old folks home." Officer Barrett related that when the truck stopped, the appellant attempted to exit the vehicle. Officer Barrett advised the appellant that he was a suspect in a robbery and that he was to remain in the vehicle. The appellant stuck his hands out the window of the truck and stated, "The gun's in the seat; I don't have the gun; I did it; I did it; please, don't shoot me."

Officer Barrett stated that he observed two racks of cigarettes and a display in the bed of the

truck. Inside the truck, Officer Barrett discovered a gun laying between the seats. Next to the gun, Officer Barrett found a "clip."

At trial, Penny Hooker testified that on the night of August 16, 2000, she was preparing to leave her house when the appellant asked for a ride. Hooker agreed to take the appellant to his sister's house. After the appellant was in the truck, Hooker asked the appellant if he had a cigarette. The appellant replied that he did not, but he told Hooker that if she would pull over he would get some cigarettes. Accordingly, Hooker drove into the parking lot of The Pantry. Initially, Hooker drove up to the front of the store. However, the appellant instructed her to pull to the side of the store and "back in."

The appellant got out of the truck and went into The Pantry. The appellant came out of the store and Hooker heard a noise in the back of the truck. When she turned around to determine the cause of the noise, the appellant jumped into the truck, put a pistol to her ribs, and "said drive bitch." Hooker stated that before the appellant went into the store, she had not seen a gun. She also stated that she did not actually see the gun in the truck. However, she "was positive that the gun wasn't there before [the appellant] got in the truck."

Hooker testified that she did not know that the appellant was going to rob the store. When the appellant got back into the truck, he did not tell Hooker that he had robbed the store. However, Hooker explained, "I took for granted what had happened. And then once the pistol hit my ribs I knew what had happened."

Charles Abernathy was a detective with the Clarksville Police Department on August 16, 2000. Detective Abernathy was called to investigate a robbery at The Pantry. He also went to the scene where the appellant was arrested. At the scene of the arrest, Detective Abernathy searched the truck in which the appellant had been riding and discovered a "pistol and a clip" between the seats of the truck. Detective Abernathy stated that the gun was loaded with "six rounds of .22 long rifle ammunition in it. And the tip up barrel of the weapon was opened up and there was a live round in the barrel itself." Detective Abernathy photographed the gun, the cigarettes, and the cigarette display which were discovered in the truck. Detective Abernathy also found a note "amongst the cigarettes."

The appellant elected not to testify at trial. In defense, the appellant recalled Penny Hooker to testify. Hooker stated that at the time of the offense, she was on probation for an aggravated assault. She stated that she was not charged as a result of the robbery of The Pantry.

The appellant was convicted of aggravated robbery and sentenced as a multiple offender to seventeen years imprisonment. The appellant timely appealed his conviction, contending that the evidence was not sufficient to support his conviction. Specifically, the appellant argues that the evidence fails to show that he was in possession of a gun at the time of the robbery; therefore, he should have been convicted of simple robbery.

## II. Analysis

In Tennessee, appellate courts accord considerable weight to the verdict of a jury in a criminal trial. In essence, a jury conviction removes the presumption of the defendant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle. 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

As we noted earlier, the appellant was charged with aggravated robbery. Aggravated robbery is defined as robbery accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. See Tenn. Code Ann. § 39-13-402(a)(1) (1997). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (1997).

In the instant case, the appellant contends that the "undisputed testimony would amount to a Simple Robbery when viewed in the light most favorable to the State." The appellant maintains that the videotape of the incident fails to show him in possession of a gun. The appellant also contends that the only gun discovered by police did not have his fingerprints on it. Moreover, the appellant claims that the victim testified that she saw the appellant in possession of a gun, but the appellant never pointed the gun at her. Therefore, he claims that the victim's testimony was inconsistent. Thus, the appellant argues that the evidence is not sufficient to sustain his conviction for aggravated robbery. The State contends that "there was more than sufficient evidence upon which a reasonable trier of fact could find appellant guilty of aggravated robbery." We agree with the State.

The victim, Sullivan, testified that the appellant came into The Pantry, showed her a pistol, and told her that he needed cigarettes. He then proceeded to grab a display rack containing eighty-six packs of cigarettes. Sullivan stated that she was "positive" that the appellant had a gun, but he never "directly" pointed the gun at her. Specifically, Sullivan stated that "[w]hen he pulled [the gun] out of the pocket the barrel was in fact pointed at me, but he didn't threaten me with it." Nevertheless, she felt "threatened" and "[t]errified." Hooker testified that after leaving The Pantry, the appellant got into the truck and held a gun to her ribs. Officer Barrett and Detective Abernathy testified that a gun was found in the pick-up truck in which the appellant was riding. At trial, Sullivan identified the gun as the one which was used by the appellant during the robbery. Police discovered the display

rack, cigarettes and a note written by an employee of The Pantry in the bed of the pick-up truck in which the appellant was a passenger.

The jury obviously determined that the robbery was "accomplished with a deadly weapon or by display of an article used or fashioned to lead the victim to reasonably believe it was a deadly weapon." See Tenn. Code Ann. § 39-13-402(a)(1). The jury, as was their prerogative, accredited the testimony of the State's witnesses and resolved any inconsistencies in favor of the State. We conclude that the evidence was sufficient to support the appellant's conviction of aggravated robbery.

### III. Conclusion

Accordingly, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE